IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 2:07cr387 |
| v. | ) | **Electronic Filing** |
| | ) | |
| **LAFAYETTE M. MORELAND** | ) | |

## OPINION

On September 3, 2010, Lafayette M. Moreland ("defendant") was sentenced to a mandatory minimum sentence of 240 months of incarceration and 10 years of supervised release after pleading guilty to conspiring to distribute a quantity of 50 grams or more of crack cocaine. Presently before the court is defendant's motion pursuant to Section 404 of the First Step Act. For the reasons set forth below, defendant's motion will be granted in the form of a re-imposed sentence of time served to date plus a reasonable period of time (not to exceed 21 days) for the Bureau of Prisons to issue any required notifications and process the release of defendant and 8 years of supervised release.

Defendant seeks a sentence of 167 months. As of as the date of his Section 404 motion was filed, May, 20, 2019, defendant had served over 138 months without considering any addition credit for good time served. According to defense counsel's estimate, a sentence of 167 months would have resulted in a sentence of time served as of May 20, 2019, which would require approximately 29 months of good time credit.[1] The court has held defendant's motion in abeyance. While there is a several month difference in counsels' respective calculations, the court is satisfied that a re-imposed sentence of time served as of this date is in effect a sentence

---

[1] The government estimated that defendant had 594 days of good time credit as of June 24, 2019, which was just shy of 20 months and that defendant had credit for a total 159 months as of that date.

of approximately 171 actual months of incarceration plus approximately 25 months of good time credit, for a total sentence credit of 196 months.

Defendant references several grounds for the requested relief.  Based on the amount of crack cocaine attributed to defendant in the Presentence Investigation Report ("PSIR"), he highlights the changes in the guidelines sentencing range that have occurred since his original sentencing and further notes the systemic changes that have occurred in the sentencing of career offenders over the past decade.  He further highlights his post-sentencing efforts toward gaining the education, training and coping skills needed to succeed upon release.  These have included developing Computer Art and Design (CAD) skills which he has utilized while working with Unicor over the past  several years, as well as completing courses in the skilled trade of carpentry.  He likewise has completed drug abuse treatment and drug education programs.  He has maintained family ties during his term of incarceration.  He has developed a five-year plan to assist in his successful release and re-integration and he has obtained the Probation Office's approval of his proposed release plan.   Finally, defendant notes his current age and maintains that his age and his post-sentencing rehabilitative efforts support the requested relief.

The government contends that defendant is not entitled to relief even if the Fair Sentencing Act of 2010 had been applied because defendant would have been charged with a statutory violation that would have resulted in the same mandatory penalties, resulting in the same minimum sentence he received.  Further, from its perspective the drug quantities attributable to defendant involved at least 500 grams of crack and this quantity when coupled with his criminal history would result in the same career offender designation.  It maintains that the original term of incarceration should remain unchanged because defendant's designation as a career offender was not affected by the First Step Act and concomitantly his guidelines sentencing range as a career offender remains unchanged.  It further reasons that at sentencing

the court varied downward by 22 months to a sentence of 240 months, and this sentence continues to be the appropriate sentence today given defendant's serious offense conduct, prior criminal history and the limited nature of the court's current scope of review.

The standards by which we review First Step Act motions are set forth in <u>United States v. Jaison Ceatrix Thompson</u>, 1:05cr42, 2019 WL 4040403 (W.D. Pa. Aug. 27, 2019), and <u>United States v. Warren</u>, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019), and those standards are incorporated herein.  Those standards and the record as developed in conjunction with the instant motion sufficiently support the determination that the court should exercise its discretion and award defendant the reduced sentence referenced above.

We previously have rejected the government's contention that a defendant should be denied relief merely because he or she would be subject to the same statutory penalties and guidelines sentencing range if the case were brought today.  <u>See</u> <u>United States v. Frederick</u>, 2:07cr387 (W.D. Pa. Feb. 4, 2020),  Doc. No. 452 at p. 5; <u>United States v. Dennis</u>, 2:07cr37 (W.D. Pa. Feb. 18, 2020), Doc. 63 at 2-3.  We did so because a defendant's eligibility for relief is determined solely by qualifying under the First Step Act's definition of a "covered offense" and is not conditioned on a corresponding decrease in the applicable guidelines sentencing range. <u>See</u> <u>Thompson</u>, 2019 WL 4040403 *11 n.6 (citing <u>United States v. Garrett</u>, 2019 WL 2603531, *3 (S.D. Ind. June 25, 2019) (rejecting the government's contention that relief should be denied where application of the career offender guidelines continued to produce the same sentencing range of 360 months to life and opining that "[t]he fact that Mr. Garrett's guideline range remains unchanged does not foreclose a reduction of his sentence, at least not where he was sentenced to the mandatory minimum and the mandatory minimum sentence was thereafter reduced by section 2 of the Fair Sentencing Act.") (citing <u>United States v. Bean</u>, No. 1:09-cr-143, 2019 WL 2537435, at *5–6 (W.D. Mich. June 20, 2019)); <u>accord</u> <u>United States v. Biggs</u>,

3

2019 WL 2120226, *3-4, 7 (N.D. Ill. May 15, 2019) (same); <u>United States v. Hadley</u>, 389 F. Supp.3d 1043, 1048 (M.D. Fla. 2019) (granting First Step Act motion notwithstanding unchanged career offender guidelines sentencing range of 360 months to life); <u>United State v. Payton</u>, 2019 WL 2775530, *4-5 (E.D. Mich. July 2, 2019) (granting First Step Act relief where career offender guidelines sentencing range remained unchanged); <u>United States v. Clemon</u>, 2019 WL 6894130, *1 (D. S.C. Dec. 18, 2019) (granting relief where pre- and post-First Step Act guidelines sentencing range remained unchanged); <u>cf.</u> <u>United States v. Brandon</u>, 2019 WL 4139400, *3-4 (E.D. Mich. Aug. 30, 2019) (granting First Step Act relief notwithstanding presidential commutation of sentence that reduced it below the guidelines sentencing range applicable at First Step Act re-sentencing) (collecting cases).  Thus, even assuming we are unable to re-examine a defendant's prior guidelines sentencing calculations and he or she remains subject to the same guidelines sentencing range, these sentencing factors are not legal barriers to awarding First Step Act relief.

We likewise have rejected the government's argument that we should follow the sentencing rationale utilized at a defendant's original sentencing hearing and simply arrive at the same sentence.  See <u>United States v. Frederick</u>, 2:07cr387 (W.D. Pa. Feb. , 2020),  Doc. No. 452 at p. 5; <u>United States v. Warren</u>, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019); <u>United States v. Dennis</u>, 2:07cr37, Doc. 63 at 3.  That rationale was advanced under a set of existing precepts that were displaced by the First Step Act and replaced by the standards embodied therein.  The standards now governing the task at hand were intended to give the defendant a "do-over of sorts" and we fail to see any sound justification for shirking the responsibility of performing that task under the guise of prior judicial musings rendered under meaningfully different circumstances.

We likewise have declined to limit our review of the information to be considered in conjunction with a section 404 First Step Act motion to 1) the information available at the time of the original sentencing and/or 2) only changes in the applicable guidelines.  See Thompson, 2019 WL 4040403, *8-11 (declining to adopt the scope of review under 18 U.S.C. § 3582(c)(2) on the ground that "the First Step Act contains its own independent grant of discretionary authority to the district courts by permitting a 'court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'  This grant 'authorizes a reduction in sentence by its own terms' and does not depend on any complimentary authority in § 3582.") (quoting Dodd, 372 F. Supp.3d at 797 n.2 and Boulding, 379 F. Supp.3d at 653); Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019) (declining to limit the scope of review to the record as it existed at the original sentencing hearing and/or to follow in lockstep with the original sentencing rationale).  Instead, we have determined that "a court deciding whether to impose a reduced sentence under section 404 should evaluate all such information pursuant to the 'lodestone' of sentencing factors set forth in 18 U.S.C. § 3553(a), any changes to the applicable guideline range, post-sentencing conduct bearing on rehabilitation and so forth." Thompson, 2019 WL 4040403, *10 (collecting cases).

This approach "permits the court to engage in its traditional role of factfinding in relation to the imposition of a sentence within the prescribed limits."  Id.  "It also permits the consideration of the brute facts and information that traditionally have a bearing on the sound exercise of the court's sentencing discretion."  Id.

Each of the above tenants has since become settled law under the United States Court of Appeals for the Third Circuit's controlling and persuasive precedent.  A defendant's eligibility to receive relief under the First Step Act turns on whether the elements of the offense of conviction

5

were modified by sections 2 or 3 of the Fair Sentencing Act of 2010 and not whether his or her actual conduct might have supported charges of the same or greater magnitude.  United States v. Jackson, 964 F.3d 197, 201-02 (3d Cir. 2020).  This approach is supported by the textual structure of the First Step Act, the "anti-surplusage" cannon of statutory construction, the verb tense utilized in the statute, the structure of the modifications made by the Fair Sentencing Act of 2010, the common understanding of a "violation" and "the clear weight of persuasive authority" issued by the other courts of appeals.  Id. at 202-04.  It likewise avoids the speculation that would ensue if eligibility determinations were based on the anticipated discretionary decisions that the prosecutors and courts frequently make under the myriad of circumstances that arise in such settings.  Id. at 205.  And it is in line with the straightforward approach that Congress chose in crafting the statute.  Id. ("Beyond a few specific limitations found within the First Step Act, we see 'no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis.'") (quoting Wirsing, 943 F.3d at 186 (citing § 404(a), 132 Stat. at 5222)).

It likewise is settled that relief under the First Step Act is not barred solely because a defendant's actual conduct continues to produce the same guidelines sentencing range.  United States v. Easter, 975 F.3d 318, 327 (3d Cir. 2020).  Instead, once a defendant is determined to be eligible for relief, the court's decision as to whether to grant it and impose a new sentence must be grounded in a meaningful and individualized assessment of the § 3553(a) factors "to the extent they are applicable."  Id. at 326.  These factors encompass any post-sentencing developments, such as health issues and measures aimed at rehabilitation.  Id. at 326-27.  Thus, while an eligible defendant is not entitled to relief or even a plenary hearing in exercising the discretion afforded under the First Step Act, the "do-over of sorts" in deciding whether relief should be granted requires an application of the traditional sentencing factors to the current

circumstances presented through the motion.  Id. at 325.  Such an approach 1) assures that any recent changes having a bearing on the mandated balancing of factors are considered and 2) advances the goals of promoting consistency and predictability in sentencing.  Id.

Of course, our unwillingness to follow the government's lead on the tenants recounted above does not mean that the salient aspects of defendant's character and criminal history it has highlighted should be discounted.  To the contrary, those factors continue to inform the sound exercise of discretion in formulating an appropriate sentence.  But it is the discretion that has been afforded by the First Step Act that must be exercised in accordance with the prevailing standards of today notwithstanding the government's perception that yesterday's views were better.

We turn to that undertaking in this case.  To sustain the conviction in violation of § 846 and impose the mandatory sentences required by § 841(b)(1)(A)(iii), the relevant statutory element the government was required to prove was that the offense involved an agreement to distribute or possess with the intent to distribute more than 50 grams of crack cocaine.  Sections 2 and 3 of the Fair Sentencing Act modified the statutory penalty for this offense by raising the threshold quantity "to trigger the 10-years-to-life range" to 280 grams and lowering the penalty range for 50 grams to the "5-to-40-year range."  Easter, 975 F.3d at 321.  Under the controlling "statute of conviction approach," defendant was convicted of and sentenced for a "covered offense" as defined by the First Step Act.  Jackson, 964 F.3d at 202 & n.6

Defendant's offense conduct involved conspiring to possess with the intent to distribute at least 500 grams but fewer than 1.5 kilograms of crack cocaine.  A number of controlled purchases were made directly from him and his co-defendant/co-conspirator, Anthony Frederick.

Defendant's prior criminal history reflected numerous convictions spanning over 12 years.  His criminal history began in 1992.  In the years that followed he acquired three convictions for drug trafficking offenses as well as two convictions for the violent offenses of aggravated assault and intimidating a witness.  He committed numerous other offenses on a persistent basis until 2007, when he was arrested and detained on the instant offense.  He was under two terms of supervision (a term of probation and a term of parole) when he committed the instant offense and had amassed convictions between 1992 and 2002 that gave rise to a total of 31 criminal history points.

Defendant's career offender status produced a guidelines sentence range of 262 to 327 months.  At sentencing this member of the court observed that defendant had a significant criminal record that included both violent and drug distribution offenses.  The court nevertheless varied to the mandatory minimum sentence of 240 months.

Notwithstanding defendant's prior interaction with the criminal justice system between the ages of 20 and 29, he had only served relatively short sentences of incarceration prior to being sentenced on the instant offense.  He served about three years for a number of offenses committed in 1992 and 1993, about a year for offenses committed in 2000 through 2001, and about a year for a 2002 drug trafficking offense.

The lack of any incrementally proportionate increase in incarceration between the state sentences of a few months to a few years and the 20 year minimum sentence mandated on the instant federal offense was an important factor that informed this court's decision to vary downward from 262 to what was then the floor of 240 months.  And this significant lack of a proportional increase in punishment between the prior state court punishments and the congressionally mandated sentence this court was required to impose continues to be an

important factor that the court has taken into account in granting the discretionary relief afforded by the First Step Act.[2]

Several other aspects of the record inform the exercise of our discretionary authority and support the imposition of a reduced sentence here.  Defendant has sought to prepare himself for a successful reintegration into society.  He sought to address the behavior that plagued him as a younger adult by successfully completing drug abuse programs.  He was accepted into the "Men of Influence" program in April of 2011 and he completed that program in November of that year, equipping him the skills to mentor and nurture the productive development of other inmates.  He has used those skills in assisting with the Suicide Prevention Program at FCI Cumberland from November of 2011 through at least March of 2019.  He also has taken numerous vocational and educational courses geared toward self-improvement and success after release.  These have included completing the courses for certification in the skilled trade of carpentry such as "power tools, form work, framing, roof framing, and carpentry marketing" as well as completing courses in computer assisted design.  He was recognized as a role model student in May of 2014.  He has worked with Unicor over the past several years designing emblems used by various federal agencies and signs used in various federal programs.  And his institutional behavior has earned him at least 594 days of good time credit as of June of 2019, with a history of only minor disciplinary infractions in 2010, 2012 and 2013.  This history suggests he has been free from

---

[2]  Contrary to the government's position, the current penalties under § 841(b)(1)(A) for a second offense trigger a 15 year mandatory minimum sentence.  Thus, even assuming that the court were to apply the penalties for the actual offense conduct as advocated by the government, a re-imposed sentence of time served - consisting of 171 months with good time credit of 25 months, resulting in a total sentence of 196 months - is higher than the statutorily mandated minimum sentence for the offense conduct.

major disciplinary incidents over the past several years and has not been a management

concern for the Bureau.[3]

      Finally, defendant was young at the time he committed the predicate offenses.  He

received only modest sentences of incarceration on those offenses.  He was in his early thirties at

the time he committed the instant offense.  He has now served over 14 years.  He is approaching

50 years of age and has reached an age where the statistics on the recidivism show that his

likelihood of re-offending has meaningfully declined.[4]  He has maintained meaningful family

support and community ties and developed an approved release plan.  His current age, post-

sentencing conduct while incarcerated and family ties bode well for his successful reintegration.

Collectively, these factors further support the determination that a re-imposed sentence of  time

served (171 months served and adjusted to 196 months for good time served: 196 months/16

years and 4 months) is a sufficient term of incarceration.

      Consideration of all of the above through the lens of the § 3553(a) factors convinces us

that the proper exercise of discretion is a reduction to a term of time served and 8 years of

supervised release.  A reduction of this degree strikes the proper balance in applying the §

3553(a) factors and imposes a sentence that is sufficient but not greater than necessary to achieve

the goals of sentencing.  Although defendant's offense conduct constituted a serious drug-

trafficking operation, an adjusted sentence of 196 months adequately reflects the seriousness of

the offense, promotes respect for the law, and provides just punishment.  It likewise is sufficient

to serve the interests of promoting adequate deterrence and protecting society from harm.  It

---

[3]  The recent adjustment of defendant's projected release date from April 3, 2025, to November 15, 2024, see Doc. No. 471, indicates that defendant's satisfactory compliance with the Bureau's requirements for good time credit has continued during the pendency of the instant motion.
[4]  See National Institute of Justice, Five Things About Deterrence (May 2016), at 2, available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf  ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age.  The data show a steep decline at about age 35.").

further appears to have satisfied the need to rehabilitate defendant.  Accordingly, defendant's

motion pursuant to Section 404 of the First Step Act will be granted by separate order in the form

of re-imposed sentence of time served to date plus a reasonable period of time (not to exceed 21

days) for the Bureau of Prisons to issue any required notifications and process the release of

defendant and 8 years of supervised release.  A Judgment Order of Conviction and Sentence

imposing this new sentence will be issued.

Date: February 28, 2022

                                                                s/David Stewart Cercone
                                                                David Stewart Cercone
                                                                Senior United States District Judge

cc:     Adam N. Hallowell, AUSA
        Khashayer Attaran, AFPD

        (*Via CM/ECF Electronic Mail*)

11